UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| J.J.R. DISTRIBUTING CORPORATION, *et al.*, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Civil No. 9-210-P-S |
| | ) |
| SANDLER BROS., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDED DECISION**

Fourteen plaintiffs have sued five separate defendants in this action based upon 7 U.S.C. §§ 499a *et seq*., the Perishable Agricultural Commodities Act. The plaintiffs are Massachusetts corporations engaged in the business of buying and selling wholesale quantities of produce in interstate commerce and the sole remaining defendant, Sandler Brothers, is a Maine corporation engaged in the same business that purchased items from the plaintiffs and has not made timely payment on its obligations. Mark Sandler, Marjorie Sandler, and Michelle Sandler Paulsson were dismissed following a notice of settlement. As to Candice O'Brien the action is stayed due to Chapter 7 bankruptcy proceedings. (Doc. No. 68.) Sandler Bros. never appeared in this action, has been defaulted, and default judgment in the total amount of almost $340,000.00, plus interest, costs, and attorney fees has been entered by way of default judgment. (Doc. No. 71.) The plaintiffs' attorneys, both Massachusetts and local, have submitted affidavits and other documentation in support of their Application for Award of Attorneys' Fees and Costs Against Defendant Sandler Bros. (Doc. No. 74), requesting $46,871.17 in attorneys' fees, $27,994.17 of which is sought by Osborne & Fonte, Boston counsel, and $18,877.00 of which is sought by Sean Joyce, local counsel. Pursuant to Local Rule 54.3, costs in this matter are to be taxed by

the Clerk.  However, pursuant to Federal Rules of Civil Procedure 54(d)(2)(D) and 72(b), the court has referred the matter to me for a recommended decision on the issue of an award of attorneys' fees.  Having reviewed the plaintiffs' submissions I now recommend that the court award $36,080.45 in attorneys' fees to the prevailing parties, to be apportioned as counsel deem appropriate.

## DISCUSSION

In their application for attorneys' fees the plaintiffs claim they are entitled to such fees pursuant to "7 U.S.C. § 499e(c) and the regulations promulgated pursuant thereto."[1]  At least some of the invoices submitted by some of the plaintiffs in support of the motion for attachment and trustee process establish that certain of the plaintiffs have a contractual claim for attorneys' fees arising under the invoices.  (See Aff. of Peter Alphas, Doc. No. 23-1;  Aff. of Robert Nano, Doc. No. 24-1;  Aff. of Gregg Dziama, Doc. No. 28-1;  Aff. of Steven Folrizzi, Doc. No. 30-1; Aff. of Lisa Burke, Doc. No. 31-1.)  Regardless of whether the award of fees is based solely upon the statutory claim or arises under the contractual provisions, the court's judgment clearly reflects that plaintiffs are entitled to recover reasonable fees and I shall proceed accordingly.

Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The plaintiffs bear the burden of establishing the reasonableness of the rates and hours submitted in their motion for fees.  Chaloult v.

---

[1]    It is not clear that all circuits allow recovery for a contract claim for attorneys' fees under a statutory PACA action.  See Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632-33 (11th Cir. 2004); Middle Mountain Land and Produce Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1222 n.4 (9th Cir. 2002); Nobles-Collier, Inc. v. Hunts Point Tomato Co., Inc., No. 02 Civ. 4128 (LMM, 02 Civ. 5287 (LMM), 2004 WL 102756, * 2, 2009 U.S. Dist. Lexis 722, *7 (S.D.N.Y. Jan.22, 2004).  I could find no First Circuit law addressing the issue.

Interstate Brands Corp., 296 F. Supp. 2d 2, 4 (D. Me. 2004). Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case "and then subtract[ing] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The court then applies hourly rates to the constituent tasks, taking into account the "prevailing rates in the community for comparably qualified attorneys." United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988); see also Grendel's Den, 749 F.2d at 955. Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances. Generally, a reasonable rate corresponds to the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 894 & n. 9 (1984). In a case such as this one where the plaintiffs obtained only partial success on their complaint, having judgment entered as to only one of the five defendants, the court must undertake a further task before arriving at the ultimate fee award. "The figure derived from the lodestar calculation may be adjusted up or down to reflect [their] degree of success in the litigation." Chaloult, 296 F. Supp. 2d at 4.

**A.      The Lodestar calculation**

According to the billing records submitted by plaintiffs' attorneys, Attorney Osborne spent 79.98 hours on this case billed at a reasonable hourly rate of $ 350.00 per hour for his services. In his affidavit (Doc. No. 74-1) he references billing rates for an associate at $250.00 per hour and for paralegals at $80.00 per hour, but the actual "pre-bill worksheet" submitted in support of the application shows all of the time billed at Osborne's rate. Attorney Joyce, who began his representation approximately two months after Osborne, claims 87.80 hours at $215.00 per hour. Attorney Osborne's hourly rate of $350.00 per hour is higher than the hourly rate

usually allowed by this court.  The payment of non-local rates for highly specialized counsel is not unreasonable in an appropriate case.  Howes v. Med. Components, Inc., 761 F. Supp. 1193, 1195 (E. D. Penn. 1990).  However, this case is a relatively straightforward collection case, involving one defendant who is bankrupt and a corporate defendant who never appeared and has offered no defense to the amount owing.  The maximum rate usually awarded to counsel in the Greater Portland area, in my experience, is in the vicinity of $250.00[2] per hour and that is the figure I have used in regard to Attorney Osborne's bill.  Attorney Joyce's hourly rate of $215.00 per hour is deemed reasonable.

      Turning to the number of hours billed, Osborn's supporting documentation asserts that he spent 79.98 hours on the case and I have no reason to question the number of hours billed.  I would recommend that the court award Osborn $19,995.00 in attorneys' fees.  Attorney Joyce's total hours (87.80) appear to represent a number of instances where Attorney Osborne also billed for the same work.  For instance, on May 13, 2009, Attorney Joyce's bill includes 1.3 hours for strategy discussion with Attorney Osborne, and Attorney Osborne billed 2.5 hours for the same events.  Likewise, on June 11, 2009, Joyce billed 2.40 hours for reviewing pleadings sent to him by Osborne and on June 9, 2009, Osborne had billed 2.5 hours to draft those pleadings and send them to Joyce.  I appreciate that local counsel take their job seriously and necessarily review documents before filling them with the court, but it does not seem reasonable to me that the secondary attorney should have more hours in the case than lead counsel.  I recognize that arriving at a number of hours reasonably billed in a situation such as this is more art than science.  Nevertheless, in order to prevent double billing for the same essential work and to account for the fact that Attorney Osborne had already billed 13.33 hours prior to Joyce's

---

[2]     For instance, in an IDEA case decided less than two years ago, I recommended approving an attorney fee request of $225.00 per hour for an experienced Portland attorney in a complex case.  Mr. C v. MSAD 6, 2008 WL 2609362 *2, Civil No. 02:06-198-P-H (D. Me.)

4

involvement, I believe that a 15% deduction (13.17 hours) is reasonable, resulting in 74.63 billable hours.  I compute the attorneys' fees award for Joyce's service to be $16,085.45, resulting in a total lodestar calculation of $36,080.45.

**B.     Upward/downward Adjustments**

In support of their claim for the amount of fees originally requested, counsel notes that the case was accepted on a contingent basis requiring compensation at the rate of twenty-five percent (25%) of all amounts collected, including interest and amounts awarded for attorneys' fees.  If the entire outstanding balance were collected, the fees would exceed $80,000.00.  (Osborne Aff. ¶ 8, Doc. No. 74-1.)  I do not see the contingency fee agreement as a basis for an upward adjustment to the generous lodestar calculation I just made, especially in a case of this nature where judgment was entered by default, the primary defendant ceased operations, and the remaining defendants either settled, were dismissed, or are in bankruptcy.

Nor do I think it is necessary to make any downward adjustment for the fact that certain of the defendants did not have judgment entered against them.   Almost all of the items billed, except perhaps for some of the research, would have been necessary even if Sandler Bros. had been the only party in the case.  The other defendants were principals in the business and it is inevitable that in trying to obtain payment from the corporate defendant, the issue of their liabilities would be explored, especially so since some courts that have addressed the question of individual liability under PACA have allowed some form of recovery for PACA creditors against officers or shareholders perceived to be in fiduciary positions vis-à-vis PACA trust accounts.  See, e.g., Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 349 (S.D.N.Y. 1993); but see Farm-Wey Produce, Inc. v. Wayne L. Bownman Co., Inc., 973 F. Supp. 778, 783-84 (E.D. Tenn. 1997).  However, at least one court has recognized there can be no liability if there

were never any assets in the PACA trust to begin with. <u>Sanzone-Palmisano Co. v. Seaman Enterprises, Inc.</u>, 986 F.2d 1010, 1014 (6th Cir. 1993). In sum, it appears that suing the individuals in this particular case offered little hope of success, but the time spent pursuing the individual defendants was necessary to the proper preparation of the case against Sandler Bros.

## Conclusion

Based upon the foregoing I recommend that the court award attorneys fees as set forth in this recommended decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 23, 2010